IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INTELLECTUAL VENTURES I LLC, | |
| *Plaintiff*, | Civil Action No. 1:13-cv-01668-LPS |
| v. | JURY TRIAL DEMANDED |
| AT&T MOBILITY LLC; AT&T MOBILITY II LLC; AND NEW CINGULAR WIRELESS SERVICES, INC., | |
| *Defendants*, | |
| and | |
| ERICSSON INC. AND TELEFONAKTIEBOLAGET LM ERICSSON, | |
| *Intervenors*. | |
| INTELLECTUAL VENTURES II LLC, | |
| *Plaintiff*, | Civil Action No. 1:14-cv-01229-LPS |
| v. | JURY TRIAL DEMANDED |
| AT&T MOBILITY LLC; AT&T MOBILITY II LLC; AND NEW CINGULAR WIRELESS SERVICES, INC., | |
| *Defendants*, | |
| ERICSSON INC. AND TELEFONAKTIEBOLAGET LM ERICSSON, | |
| *Intervenors*. | |

| | |
|---|---|
| INTELLECTUAL VENTURES I LLC, | |
| *Plaintiff*, | Civil Action No. 1:13-cv-01669-LPS |
| v. | JURY TRIAL DEMANDED |
| CRICKET COMMUNICATIONS, INC., | |
| *Defendant*, | |
| and | |
| ERICSSON INC. AND TELEFONAKTIEBOLAGET LM ERICSSON, | |
| *Intervenors*. | |
| INTELLECTUAL VENTURES II LLC, | |
| *Plaintiff*, | Civil Action No. 1:14-cv-01230-LPS |
| v. | JURY TRIAL DEMANDED |
| CRICKET COMMUNICATIONS, INC., | |
| *Defendant*, | |
| and | |
| ERICSSON INC. AND TELEFONAKTIEBOLAGET LM ERICSSON, | |
| *Intervenors*. | |

INTELLECTUAL VENTURES I LLC,

    *Plaintiff*,

    v.

NEXTEL OPERATIONS, INC. AND
SPRINT SPECTRUM L.P.,

    *Defendants*,

    and

ERICSSON INC. AND
TELEFONAKTIEBOLAGET LM
ERICSSON,

    *Intervenors*.

Civil Action No. 1:13-cv-01670-LPS

JURY TRIAL DEMANDED

INTELLECTUAL VENTURES II LLC,

    *Plaintiff*,

    v.

NEXTEL OPERATIONS, INC. AND
SPRINT SPECTRUM L.P.,

    *Defendants*,

    and

ERICSSON INC. AND
TELEFONAKTIEBOLAGET LM
ERICSSON,

    *Intervenors*.

Civil Action No. 1:14-cv-01231-LPS

JURY TRIAL DEMANDED

INTELLECTUAL VENTURES I LLC,

     *Plaintiff*,

     v.

T-MOBILE USA, INC. AND T-MOBILE
US, INC.,

     *Defendants*,

     and

ERICSSON INC. AND
TELEFONAKTIEBOLAGET LM
ERICSSON,

     *Intervenors*.

Civil Action No. 1:13-cv-01671-LPS

JURY TRIAL DEMANDED

INTELLECTUAL VENTURES II LLC,

     *Plaintiff*,

     v.

T-MOBILE USA, INC. AND T-MOBILE
US, INC.,

     *Defendants*,

     and

ERICSSON INC. AND
TELEFONAKTIEBOLAGET LM
ERICSSON,

     *Intervenors*.

Civil Action No. 1:14-cv-01232-LPS

JURY TRIAL DEMANDED

INTELLECTUAL VENTURES I LLC

    *Plaintiff*,

    v.

UNITED STATES CELLULAR
CORPORATION,

    *Defendant*,

    and

ERICSSON INC. AND
TELEFONAKTIEBOLAGET LM
ERICSSON,

    *Intervenors*.

Civil Action No. 1:13-cv-01672-LPS

JURY TRIAL DEMANDED

---

INTELLECTUAL VENTURES II LLC,

    *Plaintiff*,

    v.

UNITED STATES CELLULAR
CORPORATION,

    *Defendant*,

    and

ERICSSON INC. AND
TELEFONAKTIEBOLAGET LM
ERICSSON,

    *Intervenors*.

Civil Action No. 1:14-cv-01233-LPS

JURY TRIAL DEMANDED

## DEFENDANTS' SUPPLEMENTAL CLAIM CONSTRUCTION BRIEF REGARDING UNITED STATES PATENT NUMBER 7,385,994

# TABLE OF CONTENTS

Page

I.    INTRODUCTION.................................................................................................1

II.   U.S. Patent No. 7,385,994 (Speight) [Asserted cls. 1, 2-5, 10-11].......................1

    A.    means for allocating a tier of service for each of a plurality of individual packet data queues, wherein the means for allocating allocates different weights to each tier of service based on a number of users requiring access to the available communication resource [cl. 11] ................................................................1

        1.    The specification does not clearly link IV's identified $\varphi_{tier\_i}$ formula to the recited "allocates different weights" function. ....................................3

        2.    IV's new construction rewrites the specification to equate "weight" with "proportion."...........................................................................................4

        3.    The structure IV relies on, in any event, is inadequate to perform the recited "allocates different weights" function.............................................5

    B.    means for determining a total number of data packets that can use an available communication resource [cl. 11] ................................................................6

    C.    means . . . for allocating a proportion of said total number of data packets to a number of the tiers of service to allow individual packet data queues on a number of tiers to share a communication resource [cl. 11]....................................8

    D.    scheduling means to provide said communication resource to queued packet data users on a tier-by-tier basis, such that said resource is made available to all tiers [cl. 11]..............................................................................................9

**TABLE OF EXHIBITS**

| Exhibit No. | Description |
|---|---|
| A8 | Second Supplemental Declaration of Dr. Izhak Rubin, dated Mar. 8, 2016 |
| A9 | February 23, 2016 Email from P. Ducker to K. Jacobs |
| Ex. G | Ex. G to the Parties' Amended Joint Claim Construction Chart (D.I. 207), U.S. Patent No. 7,385,994 (the "'994 Patent") |

## TABLE OF ABBREVIATIONS

| Abbreviation | Description |
|---|---|
| IPR | *Inter Parties* Review |
| IV | Intellectual Ventures I LLC and Intellectual Ventures II LLC |
| IV TT | IV's Technology Tutorial |
| JCCB | Joint Claim Construction Brief |
| JCCC | Joint Claim Construction Chart as filed on December 30, 2015, D.I. 175, C.A. No. 1:13-1668-LPS. |
| MPF | Means Plus Function |
| PTAB | Patent Trial and Appeal Board |
| Rubin 2nd Supp. Decl. | Second Supplemental Declaration of Dr. Izhak Rubin, dated Mar. 8, 2016 |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ergo Licensing, LLC v. FLO TV Inc.*,
  673 F.3d 1361 (Fed. Cir. 2012)........................................................................................6

*Function Media, L.L.C. v. Google, Inc.*,
  708 F.3d 1310 (Fed. Cir. 2013)......................................................................................10

*Ibormeith IP, LLC v. Mercedes-Benz USA, LLC*,
  732 F.3d 1376 (Fed. Cir. 2013)..............................................................................4, 7, 10

*Med. Instrumentation & Diagnostics Corp. v. Elekta AB*,
  344 F.3d 1205 (Fed. Cir. 2003)........................................................................................2

*Noah Sys., Inc. v. Intuit Inc.*,
  675 F.3d 1302 (Fed. Cir. 2012)....................................................................................3, 4

*SkinMedica, Inc. v. Histogen Inc.*,
  727 F.3d 1187 (Fed. Cir. 2013)..................................................................................4, 10

*Williamson v. Citrix Online, LLC*,
  792 F.3d 1339 (Fed. Cir. 2015)....................................................................................1, 2

## I.    INTRODUCTION

IV now admits that the constructions it offered in the JCCC for the four MPF limitations found in claim 11 of the '994 Patent are incorrect for failing to identify any algorithm as corresponding structure.[1]   But IV's last-ditch attempt to save claim 11 from indefiniteness actually shows why, for each MPF term, the specification lacks structure that is both "clearly link[ed] or associate[ed]" and "adequate . . . to achieve the claimed function."  *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1352 (Fed. Cir. 2015).  To support its new positions, IV rewrites the specification to redefine "weight" to "default weight," "proportion" to "weight," and "total number of data packets" to "proportion."  IV's new proposed constructions conflict with the specification and run contrary to statements IV made in its opening brief.  And, in certain instances, IV still does not include the purported algorithm in its construction, thus failing to provide the necessary clarity for a jury.  IV's continued failure to identify sufficient algorithms as part of the corresponding structure renders these MPF limitations indefinite.

## II.    U.S. PATENT NO. 7,385,994 (SPEIGHT) [ASSERTED CLS. 1, 2-5, 10-11]

   A.    **means for allocating a tier of service for each of a plurality of individual packet data queues, wherein the means for allocating allocates different weights to each tier of service based on a number of users requiring access to the available communication resource [cl. 11]**

| Defendants' Construction | Plaintiff's Revised Construction |
|---|---|
| MPF limitation under § 112 ¶ 6 | MPF limitation under § 112 ¶ 6 |
| **Function:** allocating a tier of service for each of a plurality of individual packet data queues, wherein the means for allocating | **Function:** allocating a tier of service for each of a plurality of individual packet data queues, wherein the means for allocating allocates different weights to each tier of service based on a number of users requiring access |

---

[1] IV blames the "complexity of the '994 Patent," which required "further discussion with IV's expert" for its failure to identify sufficient structure.  JCCB, 157 n.83.  IV never explains why it waited until three days before the deadline for the responsive claim construction briefs to disclose these new constructions.  *See* Ex. A9, at 1-3.  Consequently, Defendants were unable to address these new constructions in their responsive brief—which instead addressed the positions in IV's opening brief.  This brief addresses why IV's new structures are still insufficient.

| allocates different weights to each tier of service based on a number of users requiring access to the available communication resource<br><br>**Structure:** None | to the available communication resource<br><br>**Structure:** RNC236-240 and/or Logic 248-250 implementing algorithm:<br><br>$$\phi_{tier\_i} = \frac{N_{tier\_i} * S_{tier\_i}}{\sum\limits_{k=1}^{L} N_{tier\_k} * S_{tier\_k}}$$ |

What IV now argues is the structure corresponding to this claim element's recited function, i.e., "allocates different weights . . . based on a number of users . . ." is indisputably the same structure IV previously identified as corresponding to a different function in a different element, i.e., "allocating a proportion of said total number of data packets to a number of the tiers . . . . ," as IV's Opening Claim Construction Brief reflects (JCCB, 189):

| Plaintiffs' Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Means-plus-function limitation under § 112 ¶ 6<br><br>**Function:** allocating a proportion of said total number of data packets to a number of the tiers of service to allow individual packet data queues on a number of tiers to share a communication resource<br><br>**Structure:** RNC236-240 and/or Logic 248-250 implementing the algorithm<br><br>$$\phi_{tier\_i} = \frac{N_{tier\_i} * S_{tier\_i}}{\sum\limits_{k=1}^{L} N_{tier\_k} * S_{tier\_k}}$$ | Means-plus-function limitation under § 112 ¶ 6<br><br>**Function:** allocating a proportion of said total number of data packets to a number of the tiers of service to allow individual packet data queues on a number of tiers to share a communication resource<br><br>**Structure:** None |

The specification associates this formula with the "allocating a proportion" element, as IV previously recognized, not "allocating different weights," as IV now contends.  Thus, IV cannot satisfy the clear linkage/association requirement for § 112(6) claims, and in any event, the algorithm it now points to is inadequate to perform the claimed function.  *Williamson*, 792 F.3d at 1352; *Med. Instrumentation & Diagnostics Corp. v. Elekta AB*, 344 F.3d 1205, 1210 (Fed. Cir. 2003); *Noah Sys., Inc. v. Intuit Inc.*, 675 F.3d 1302, 1312 (Fed. Cir. 2012).

1.    **The specification does not clearly link IV's identified $\varphi_{tier\_i}$ formula to the recited "allocates different weights" function.**

As IV admits in its Opening Brief, the formula for $\varphi_{tier\_i}$ is "clearly link[ed]" to the "allocating a proportion" function (JCCB, 189) and not, as IV now contends, to the "allocates different weights" element.[2]  The specification expressly introduces the formula for $\varphi_{tier\_i}$ as a "proportion" and not a "weight," specifically stating that "the **proportion** of the entire system resource, **allocated** to the [i]th tier, (within a system employing a total of L tiers), can be defined by the following function 325:"

$$\phi_{tier\_i} = \frac{N_{tier\_i} * S_{tier\_i}}{\sum\limits_{k=1}^{L} N_{tier\_k} * S_{tier\_k}}$$

Ex. G, 7:33-40.[3]   IV cites this very disclosure in support of its original construction, which identifies the $\varphi_{tier\_i}$ formula as corresponding to "allocating a proportion."  JCCB, 189.

IV's inconsistent positions as to which MPF limitation this formula corresponds to only highlights the lack of reasonable certainty associated with the MPF limitations of claim 11.  Contrary to IV's assertion that "the 'different weights to each tier of service' is expressed by $\varphi_{tier\_i}$" (JCCB, 177), the specification **never links** the aforementioned $\varphi_{tier\_i}$ to allocating weights for each tier of service (*see generally* Ex. G); and one of ordinary skill in the art would not associate this formula with the recited function.  *See* Ex. A8 (Rubin 2nd Supp. Decl.), ¶¶ 14-23.

---

[2] IV wrongly asserts that it identified the formula $\varphi_{tier\_i}$ in the JCCC for this limitation.  JCCB, 177.  IV never included *any* formula or algorithm in its identification of corresponding structure for this limitation until its responsive brief.  JCCC Ex. A-1, A-23 to A-24.  Although, as part of the JCCC, IV included block citations, including to the portion of the specification containing the formula (*id.* (citing Ex. G, 7:18-8:43)), that citation not only includes the $\varphi_{tier\_i}$ formula but also the purported "round-robin" algorithm that IV now identifies as part of the corresponding structure for an entirely different MPF limitation.  *See* JCCB, 196-97 (citing Ex. G, 7:60-67 as part of the structure for the "scheduling means" limitation).

[3] Except where otherwise noted, all emphasis herein is added.

Instead, the specification distinguishes between "proportion" and "weights," explaining that: "[I]n order to control the relative **proportions** of system bandwidth allocated to each tier, different **weights** are allocated for each tier. Hence, the $i^{th}$ tier may be defined with a tier weight $S_{tier\_i}$." Ex. G, 6:59-63.   IV's assertion that $\varphi_{tier\_i}$ is associated with a "weight" instead of a "proportion" is unsupported by any citation to the specification.  JCCB, 177-78.  And IV's expert declaration simply repeats the same language from IV's Responsive Brief verbatim (PMX 24, ¶ 36) and fails to explain how one of ordinary skill in the art would associate $\varphi_{tier\_i}$ with the recited function, as required by *Noah Sys.*, 675 F.3d at 1312.  *See also SkinMedica, Inc. v. Histogen Inc.*, 727 F.3d 1187, 1195 (Fed. Cir. 2013) ("[C]onclusory, unsupported assertions by experts as to the definition of a claim term are not useful to a court.") (internal citation omitted).[4]

### 2.    IV's new construction rewrites the specification to equate "weight" with "proportion."

Indeed, IV can only support its new position by rewriting the specification in an attempt to equate the Patent's disclosed "weights" with "proportion," even though the specification treats those two concepts differently.  The specification consistently refers to "weights" distinctly from "proportion": the weight, $S_{tier\_i}$, is actually an input to the algorithm that calculates the proportion.  As the specification explains: "[I]n order to control the relative **proportions** of system bandwidth allocated to each tier, different **weights** are allocated for each tier." Ex. G, 6:60-62.  The specification then states that the "$i^{th}$ tier may be defined with a **tier weight $S_{tier\_i}$**" (*id.*, 6:62-63), and that, using such a tier weight $S_{tier\_i}$, the "**proportion** of the entire system resource," which is described as $\varphi_{tier\_i}$ can be calculated by a formula using $S_{tier\_i}$ as an input:

---

[4] *Arguendo*, even if the proportion $\varphi_{tier\_i}$ was clearly linked to the recited weight function, it would still be insufficient.  As previously explained (JCCB, 191), there is no disclosure of how $S_{tier\_i}$, a necessary input in the formula identified by IV, is calculated or determined, rendering the formula insufficient to make the bounds of the claim understandable. *Ibormeith IP, LLC v. Mercedes-Benz USA, LLC*, 732 F.3d 1376, at 1382 (Fed. Cir. 2013).

$$\phi_{tier\_i} = \frac{N_{tier\_i} * S_{tier\_i}}{\sum\limits_{k=1}^{L} N_{tier\_k} * S_{tier\_k}}$$

Ex. G, 7:33-40. Nowhere in the specification is $\varphi_{tier\_i}$ ever tied to the claimed "weight." Not only does the specification lack a clear linkage between the claimed function and the structure IV relies on, it lacks any linkage at all. On that basis alone, IV's argument fails, and this claim element is indefinite.

### 3. The structure IV relies on, in any event, is inadequate to perform the recited "allocates different weights" function.

Separate and apart from its lack of clear linkage to the recited function, the algorithm IV relies on also fails to satisfy § 112(6) because it is inadequate to perform the recited "allocates different weights" function. The specification describes $S_{tier\_i}$ as the weight for each tier. Ex. G, 6:62-63. But $S_{tier\_i}$ is an input to the algorithm IV relies on, not its result. By definition, the algorithm IV relies on cannot be used to calculate $S_{tier\_i}$ and is thus inadequate to calculate what the specification describes as a weight, i.e., $S_{tier\_i}$. IV itself tacitly recognizes this problem, because it again tries to rewrite the specification to circumvent it. IV coins a new label for the tier weights $S_{tier\_i}$, which are the only "weights" described in the specification, calling them "default weights." JCCB, 178. However, the word "default," much less "default weight," ***never appears*** in the Patent's specification, claims or file history. IV's attempt to redefine $S_{tier\_i}$ as a "default weight" so that it can refer to the proportion $\varphi_{tier\_i}$ as a weight must be rejected.[5]

As shown above, the specification makes clear that the claimed "weight" is the tier weight $S_{tier\_i}$ and not the proportion $\varphi_{tier\_i}$. Even if IV had properly identified tier weight $S_{tier\_i}$ as the corresponding structure, there is simply no disclosure in the specification of how the tier

---

[5] IV's attempt to equate "proportion" to "weight" (JCCB, 178-79) also ignores that, while $\varphi_{tier\_i}$ must always equal a known fraction and the sum of $\varphi_{tier\_i}$ across all tiers i must total one, there are no such limitations on the tier weight $S_{tier\_i}$. *See* Ex. A8 (Rubin 2nd Supp. Decl.), ¶¶ 20-23.

weight $S_{tier\_i}$ is calculated "*based on a number of users* requiring access to the available communication resource," as the recited function of claim 11 requires.  JCCB, 174-75.  This lack of disclosure renders this MPF limitation indefinite.[6]

**B.** **means for determining a total number of data packets that can use an available communication resource [cl. 11]**

| Defendants' Construction | Plaintiff's Revised Construction |
|---|---|
| MPF limitation under § 112 ¶ 6 | MPF limitation under § 112 ¶ 6 |
| **Function:** determining a total number of data packets that can use an available communication resource | **Function:** determining a total number of data packets that can use an available communication resource |
| **Structure:** None | **Structure:** RNC236-240 and/or Logic 248-250 using the method disclosed at 6:29-37. |

In attempting to correct its prior failure to identify an actual algorithm, IV now identifies as the alleged algorithm "the method disclosed at 6:29-37."  IV states that this disclosure "explains, in prose, how to determine the total number of data packets that can use an available communication resource."  JCCB, 186-87.  IV's identification of structure is still insufficient.

*First*, the identified "method disclosed" is nothing more than a single example for a system using fixed-size data packets and does not qualify as an algorithm.  JCCB, 186 n.103.  The Federal Circuit has made clear that, "[e]ven described in 'prose,' an algorithm is still 'a step-by-step procedure for accomplishing a given result.'"  *Ergo Licensing, LLC v. FLO TV Inc.*, 673 F.3d 1361, 1365 (Fed. Cir. 2012) (citing *Typhoon Touch*, 659 F.3d at 1385).  IV's prose does not include any "step-by-step" procedure.  *Second*, even if this disclosure were converted to a formula, the formula (*see infra* note 8) would need to be included in the corresponding

---

[6] IV alleges that Ericsson's IPR expert cites to the "same portions" of the '994 Patent that IV cites to perform the claimed function.  JCCB, 180.  However, Ericsson's IPR expert does not provide an opinion as to the sufficiency of any algorithm, and the PTAB does not consider indefiniteness.  *See* JCCB 175, § VI.B.

structure.[7]  *See* JCCB, 188.  A jury should not be required to guess as to what the series of steps or formula is.   *See Ibormeith IP*, 732 F.3d at 1381 (algorithm must be "defined and understandable").  *Third*, even as a converted formula, § 112(6) is still not satisfied as there is no disclosure of an algorithm using non-fixed-size packets.  JCCB, 186 n.103, 188 n.106.  A closer review of the specification's single example confirms that it is limited to calculating an exact number of data packets in a system using fixed-size packets.  The example assumes data packets are all of a fixed size 1 kbit, and that, if a round period is 10 msec and the link can transmit at 10 Mbps, then exactly 100 packets are allocated in each round.  Ex. G, 6:29-37; Ex. A8 (Rubin 2nd Supp. Decl.), ¶ 27.[8]  It is clear from this example that, in order to determine the total number of data packets, the size of the packet must be fixed, and IV even admits that "[t]his example assumes that the packets are of fixed size."  JCCB, 187.

Despite IV's admission that this example relates to fixed-size packets, IV argues that the above disclosure for fixed-size packets "applies to non-fixed-size packets."  JCCB, 187.  IV cites to no disclosure in the specification for an example involving non-fixed-size packets, and the only expert support provided by IV is a single paragraph that repeats the argument in IV's Responsive Brief.  PMX 24, ¶ 40.  Importantly, in a system where packets may be of different sizes, it is not possible to calculate the total number of data packets that can use an available communication resource until both 1) the exact size of each packet is known in advance and 2) *after* a decision has been made as to which packets to schedule for transmission.  Ex. A8 (Rubin 2nd Supp. Decl.), ¶ 30.  However, the specification and claims of the Patent require that the total

---

[7]  Inexplicably, neither IV nor its expert actually attempt to convert the prose to a formula. JCCB, 186-87; PMX 24, ¶¶ 39-42.

[8]  The converted formula would be $P_{round} = (L * T_{round})/P_{size}$ where $P_{round}$ is the total number of packets per round; it is computed by multiplying L, the bandwidth, by $T_{round}$, the time per round and dividing by $P_{size}$ the fixed-size of the packets.  *See* Ex. A8 (Rubin 2nd Supp. Decl.), ¶ 28.

number of data packets be calculated **_prior to_** the allocation of resources and **_prior to_** any decision as to which packets to transmit. *See* Ex. G, 7:48-50; Ex. A8 (Rubin 2nd Supp. Decl.), ¶ 31. Indeed, IV's new identification of the algorithm for "allocating a proportion" requires that the total number of data packets be determined **_prior to_** the allocation itself. JCCB, 192-93; Ex. A8 (Rubin 2nd Supp. Decl.), ¶ 31. Because IV's identified example is based on the key assumption of fixed packet size, it is clearly insufficient to supply an algorithm for "determining a total number of data packets" where the packet size may vary.

      **C.**    **means . . . for allocating a proportion of said total number of data packets to a number of the tiers of service to allow individual packet data queues on a number of tiers to share a communication resource [cl. 11]**

| Defendants' Construction | Plaintiff's Revised Construction |
|---|---|
| MPF limitation under § 112 ¶ 6 | MPF limitation under § 112 ¶ 6 |
| **Function:** allocating a proportion of said total number of data packets to a number of the tiers of service to allow individual packet data queues on a number of tiers to share a communication resource | **Function:** allocating a proportion of said total number of data packets to a number of the tiers of service to allow individual packet data queues on a number of tiers to share a communication resource |
| **Structure:** None | **Structure:** RNC236-240 and/or Logic 248-250 implementing the algorithm $$\theta_i = \phi_{tier\_i} * \beta$$ |

As explained above in § II.A.1, IV's new construction for this limitation contradicts IV's Opening Brief that the specification "clearly links" the formula for $\phi_{tier\_i}$ to the claimed "allocating a **_proportion_**" function. Moreover, there is no disclosure that clearly links the equation for $\theta_i$ with the recited function. Instead, the specification makes clear that $\theta_i$ defines the number of "**_packets_** [that] can be allocated to the i[th] tier" (Ex. G, 7:48-49; Ex. A8 (Rubin 2nd Supp. Decl.), ¶¶ 34-35); and indeed, the equation for the number of data **_packets_** $\theta_i$ requires one to first allocate the **_proportion_** $\phi_{tier\_i}$ to each tier, as well as determine the total number of packets

β, before $\theta_i$ can be calculated.  Ex. G, 7:34-51; Ex. A8 (Rubin 2nd Supp. Decl.), ¶¶ 34-35.[9]

IV's attempt to identify a formula for the allocation of **packets** as performing the "allocating a **proportion**" function is also belied by statements made in IV's technology tutorial. In describing the allocation of resources to tiers in a prior art system, IV describes the allocation as the share (e.g., proportion) of each tier relative to the others, and then describes the actual amount of resources (e.g., $\theta_i$) that can be used in each tier as the "service rate."  IV TT, 41:30-42:05.  Thus, in IV's own words, the formula for $\theta_{i,}$ defines the actual amount of resources, or the "service rate," and *not* the allocation of a proportion (e.g., fraction or share).

D. **scheduling means to provide said communication resource to queued packet data users on a tier-by-tier basis, such that said resource is made available to all tiers [cl. 11]**

| Defendants' Construction | Plaintiff's Revised Construction |
|---|---|
| MPF limitation under § 112 ¶ 6 | MPF limitation under § 112 ¶ 6 |
| **Function:** provide said communication resource to queued packet data users on a tier-by-tier basis, such that said resource is made available to all tiers<br><br>**Structure:** None | **Function:** provide said communication resource to queued packet data users on a tier-by-tier basis, such that said resource is made available to all tiers<br><br>**Structure:** RNC236-240 and/or Logic 248-250 adapted to facilitate packet queuing and scheduling in a round-robin fashion as disclosed in the patent at 7:53-8:14. |

IV now admits that this limitation requires an explicit identification of an algorithm to perform the claimed function.  JCCB, 196-97.  However, IV's new proposal does not articulate an actual algorithm but instead contains a block cite to 29 lines of the specification.  *See id.*, 196. Rather than identifying the actual steps of an algorithm for performing the recited function, IV simply states that a portion of these 29 lines discloses a "scheduling means" for providing the

---

[9] The specification explains that "each tier, of a number of tiers of service, is configured to provide users with a commitment that a **proportion** of the entire system bandwidth will be **allocated** to users operating on that particular tier" (Ex. G, 6:48-51) and provides an example where **75%** of the system resource is allocated to the higher tier and **25%** to the lower tier.  *Id.*, 6:51-55.  This is consistent with disclosures elsewhere in the specification that link the claimed "proportion" with a fraction, rather than number of data packets.  *See, e.g., id.*, 7:34-40.

communication resource in a "round-robin fashion":

> When these $\gamma$ packets have been allocated the user ID at the head of the tier queue 375 is sent to the tail of the queue 355, and the queue moved along.  Hence, the users move from the tail of the queue at location 355, through an intermediate location at 365 to the head of the queue at location 375, and then back to the tail of the queue at location 355.  This process is repeated until a total of $\theta$ packets 345 have been allocated in this tier.

JCCB, 196-97 (citing Ex. G, 7:60-67).  However, IV does not indicate whether the "algorithm" is limited to the above or comprises all 29 lines of the block cite.  IV's failure to articulate the steps of the purported algorithm fails to provide the necessary guidance for a jury and renders this limitation indefinite.

Even if IV were somehow able to convert the above disclosure to a formula, it would still be insufficient to make the bounds of the claim understandable.  The above disclosure refers to $\gamma$, which is the "number of packets that can be allocated to a user when at the head of the tier queue" (Ex. G, 7:54-56), and states that $\gamma$ "can be determined from an ***algorithm*** that attempts to counteract the fact that user throughputs vary dependent on radio-channel conditions."  *Id.*, 7:57-59.  Yet, there is no disclosure of any such algorithm in the specification.  Ex. G, 7:57-59; Ex. A8 (Rubin 2nd Supp. Decl.), ¶ 38.  And while the specification states that $\gamma$ "is selected offline as a value that defines the number of packets that can be allocated to a user when at the head of the tier queue" (Ex. G, 7:54-56), there is no explanation of how one would select $\gamma$.  Ex. G, 7:54-56; Ex. A8 (Rubin 2nd Supp. Decl.), ¶ 39.  That one of ordinary skill may be able to devise a method for selecting $\gamma$ is insufficient to satisfy § 112(6).  *Function Media, L.L.C. v. Google, Inc.*, 708 F.3d 1310, 1319 (Fed. Cir. 2013).  And the paragraphs of IV's expert declaration that IV relies on for support simply repeat the statements made in IV's brief and should be disregarded as conclusory.  *See SkinMedica, Inc.*, 727 F.3d at 1195.  Thus, the specification is "without an algorithm whose terms are defined and understandable."  *Ibormeith IP*, 732 F.3d at 1381-82.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Karen Jacobs*
Jack B. Blumenfeld (#1014)
Karen Jacobs (#2881)
Jennifer Ying (#5550)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
kjacobs@mnat.com
jying@mnat.com

OF COUNSEL:

Douglas M. Kubehl
Ross G. Culpepper
Johnson K. Kuncheria
Jeffery S. Becker
Steven Jugle
Megan LaDriere
Harrison Rich
BAKER BOTTS LLP
2001 Ross Avenue, Suite 600
Dallas, Texas 75201-2980
(214) 953.6486

Joseph D. Gray
BAKER BOTTS LLP
98 San Jacinto Boulevard, Suite 1500
Austin, TX  78701-4078
(512) 322-2500

*Attorneys for Defendants United States
Cellular, T-Mobile USA, Inc. and T-Mobile
US, Inc., and Intervenors Ericsson Inc. and
Telefonaktiebolaget LM Ericsson*

Brian C. Riopelle
David E. Finkelson
MCGUIRE WOODS LLP
One James Center
901 East Cary Street
Richmond, VA  23219

Franklin D. Kang
MCGUIRE WOODS LLP
1800 Century Park East, 8th Floor
Los Angeles, CA  90067

*Attorneys for Defendants Nextel Operations,
Inc. and Sprint Spectrum, L.P.*

*Attorneys for Defendants T-Mobile USA, Inc.,
T-Mobile US, Inc., Cricket Communications,
Inc., AT&T Mobility LLC, AT&T Mobility II
LLC, New Cingular Wireless Services, Inc.,
Nextel Operations, Inc., Sprint Spectrum, L.P.,
United States Cellular, Intervenors Ericsson
Inc. and Telefonaktiebolaget LM Ericsson*

Asim M. Bhansali
David J. Silbert
Justina K. Sessions
R. Adam Lauridsen
KEKER & VAN NEST LLP
633 Battery Street
San Francisco, CA  94111-1809
(415) 391-5400

*Attorneys for Defendants T-Mobile USA, Inc.
and T-Mobile US, Inc.*

Josh A. Krevitt
Benjamin Hershkowitz
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY  10166
(212) 351-4000

Frederick S. Chung
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304
(650) 849-5300

*Attorneys for Defendants Cricket
Communications, Inc., AT&T Mobility LLC,
AT&T Mobility II LLC and New Cingular
Wireless Services, Inc.*

March 10, 2016